## S00A1784. YOUNGBLOOD v. GWINNETT ROCKDALE NEWTON COMMUNITY SERVICE BOARD.

(545 SE2d 875)

HUNSTEIN, Justice.

In 1995, appellant Margie Youngblood placed her daughter Patricia, who is mentally disabled and unable to care for herself, in a residential home sponsored by appellee, the Gwinnett Rockdale Newton Community Service Board (GRNCSB), a public agency created to govern publicly funded programs for the purpose of providing disability services not provided by other public or private providers. See OCGA § 37-2-6 (a). The GRNCSB contracted with Barbara and Charles Vaughn to care for Patricia. In March 1996, the GRNCSB employees at Patricia's place of employment noticed she had been injured. Investigation revealed she had been beaten by the Vaughns and she was removed from their home. The Vaughns were subsequently convicted of battery and simple battery.

Margie Youngblood, as guardian of the property of Patricia Youngblood, brought this action against the GRNCSB alleging breach of contract and negligence.[1] The GRNCSB filed a motion for summary judgment which the trial court granted, finding that the GRNCSB is protected by the doctrine of sovereign immunity pursuant to OCGA § 37-2-11.1 (c) (1) and there was no enforceable written contract between Patricia Youngblood and the GRNCSB. Youngblood appeals and for the reasons that follow, we affirm in part and reverse in part.

1. The trial court rejected Youngblood's constitutional challenge to OCGA § 37-2-11.1 (c) (1) and held that the GRNCSB is protected by sovereign immunity to the same extent as a county. OCGA § 37-2-11.1 (c) (1) provides, in pertinent part:

> The community service boards shall be public bodies, but shall not be considered agencies of the state, or any specific county or municipality. Such community service boards are public agencies in their own right and shall have the same immunity as provided for counties.

Youngblood contends that despite the contrary language of OCGA § 37-2-11.1 (c) (1), community service boards are departments or agencies of the State and, therefore, OCGA § 37-2-11.1 (c) (1) unconstitutionally expands the immunity to which the State is entitled under Article I, Section II, Paragraph IX of the Georgia Constitution

---

[1] Youngblood also named as defendants Barbara and Charles Vaughn and Personal Care Solutions, Inc., a corporation operated by the Vaughns. The Vaughns and Personal Care Solutions, Inc. are not parties to this appeal.

of 1983. As a threshold issue, we are thus called upon to determine whether community service boards are State agencies or departments for purposes of sovereign immunity.

Although we have not previously addressed this issue with regard to community service boards, we are guided by our opinion in *Miller v. Ga. Ports Authority*, 266 Ga. 586 (470 SE2d 426) (1996), in which we interpreted both Article I, Section II, Paragraph IX and the Georgia Tort Claims Act, OCGA § 50-21-20 et seq., to extend sovereign immunity to the State of Georgia, its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions. See OCGA § 50-21-22 (5), (6). Looking to the legislation creating the Georgia Ports Authority and the public purposes for which it was created, we held in *Miller* that the Georgia Ports Authority is a State agency entitled to raise the defense of sovereign immunity. *Miller*, supra at 589.

Applying the *Miller* analysis, a review of the law creating and defining community service boards clearly establishes that such boards are departments or agencies of the State charged with the public purpose of providing mental health care and services to the disabled citizens of this State. Community service boards were created by the General Assembly as "public agencies" to govern publicly funded programs which provide mental health, mental retardation, substance abuse, and other disability services. OCGA § 37-2-6 (a). See OCGA §§ 37-2-1 (a), (b), 37-2-11 (a). The boards were established on a multi-county level to provide, inter alia, "continuity of care through integration of county, area, regional, and state services and facilities for the disabled." OCGA § 37-2-1 (c). See OCGA § 37-2-6 (a). Considering the public purpose for which community service boards were created,[2] we find that the GRNCSB is a "state department or agency" entitled to raise the defense of sovereign immunity under Article I, Section II, Paragraph IX of the Georgia Constitution.

2. Under our State constitution, the sovereign immunity of the State may be waived only as provided by the Legislature in a tort claims act or an act of the Legislature which specifically provides that sovereign immunity is waived and the extent of such waiver. Ga.

---

[2] We further note that the administration of each community service board is governed by other State agencies under State guidelines. Specifically, community service boards are subject to the rules and regulations of the regional mental health planning units which are part of the State Department of Human Resources, OCGA §§ 37-2-4.1 (a), 37-2-6 (h), 37-2-6.1 (b); are required to comply with the policies relating to State personnel administration, OCGA § 37-2-6.1 (b) (7); their employees are subject to the State Merit System rules and regulations in regard to employment and dismissal, OCGA § 37-2-6.2 (a) (2); their property is deemed public property not subject to state or local ad valorem, sales, use or income taxes, OCGA § 37-2-6.1 (d); and the record establishes that they are insured under a policy issued by the Georgia Department of Administrative Services.

Const. of 1983, Art. I, Sec. II, Par. IX (d) and (e). See *Gilbert v. Richardson*, 264 Ga. 744 (3) (452 SE2d 476) (1994). Pursuant to this constitutional mandate, the Legislature enacted the Georgia Tort Claims Act which it chose to make applicable to *all* State agencies and departments. OCGA § 50-21-22 (5), (6). We have found that community service boards like the GRNCSB created by the Legislature pursuant to OCGA § 37-2-1 et seq. are agencies or departments of the State. See Division 1, supra. Accordingly, the Legislature acted unconstitutionally when it ignored Art. I, Sec. II, Par. IX (e) and the express terms of the Georgia Tort Claims Act by enacting OCGA § 37-2-11.1 (c) (1) so as to denominate these newly-created State agencies or departments as unclassified public entities to be accorded the same immunity as counties.

3. Although not entitled to statutory immunity pursuant to OCGA § 37-2-11.1 (c) (1), as a unit of State government the GRNCSB is entitled to the protection of sovereign immunity to the extent it has not been waived. Art. I, Sec. II, Par. IX (d). Youngblood concedes that the State has not waived its immunity from liability for any damages caused by an assault or battery, see OCGA § 50-21-24 (7), but argues that the assault and battery exception in OCGA § 50-21-24 (7) to the waiver of immunity does not protect the State from liability where the injury is caused by an assault and battery by a third party which results from the negligent performance of a ministerial duty by a State officer or employee.

OCGA § 50-21-24 (7) provides that the State shall have no liability for losses resulting from "[a]ssault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights." Unlike other subsections within OCGA § 50-21-24, subsection (7) is not limited in application to acts taken by a State officer or employee but covers all losses resulting from the torts enumerated therein. Compare id. at (1), (2), (3). The focus, therefore, is not on the duty allegedly breached by the State but on the act causing the underlying loss regardless of who committed the act. See *Ga. Military College v. Santamorena*, 237 Ga. App. 58, 61 (1) (a) (514 SE2d 82) (1999); *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70 (1) (456 SE2d 642) (1995). Because the act causing the underlying loss in this case, the beating of Patricia Youngblood, constitutes a battery, the exception in OCGA § 50-21-24 (7) to the waiver of sovereign immunity applies and the trial court did not err in granting summary judgment to the GRNCSB on Youngblood's negligence claims.

4. Youngblood contends the trial court erred in granting summary judgment to the GRNCSB on her claim for breach of contract. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a gen-

uine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Jackson v. Post Properties*, 236 Ga. App. 701 (513 SE2d 259) (1999). Assuming, arguendo, that the documents upon which Youngblood relies could constitute binding agreements with the GRNCSB, we find no evidence of a written contract between the GRNCSB and Patricia Youngblood covering the date on which she received her injuries. Accordingly, the trial court did not err in granting summary judgment to the GRNCSB on Youngblood's breach of contract claims to the extent she sought to enforce agreements to which she was a party.

Youngblood further claims, however, that as the intended third party beneficiary of written contracts between the GRNCSB and Barbara Vaughn, she has standing to maintain an action against the GRNCSB as if she were a party to the contract. See OCGA § 9-2-20 (b). Viewed in Youngblood's favor, the record shows that there are at least two written agreements between the GRNCSB and Barbara Vaughn identifying Patricia Youngblood as the resident for whom personal support and residential services would be provided during the relevant time period. To the extent such agreements may constitute written contracts with the GRNCSB conferring a benefit upon Youngblood as an intended beneficiary, the GRNCSB's sovereign immunity is waived. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). On the record before us, however, it does not appear that the trial court considered Youngblood's status as a possible third party beneficiary in ruling on the GRNCSB's motion for summary judgment. Accordingly, we remand to the trial court for consideration of the motion for summary judgment as it relates to Youngblood's third party beneficiary claim.

*Judgment affirmed in part and reversed in part and case remanded. All the Justices concur, except Fletcher, P. J., who concurs in Divisions 1, 3 and 4 and the judgment and Carley, J., who concurs specially.*

CARLEY, Justice, concurring specially.

I concur in Divisions 1, 3, 4, and in the judgment. However, I cannot join the holding of Division 2 that OCGA § 37-2-11.1 (c) (1) is unconstitutional. The majority apparently concludes that the waiver of immunity in that statute is not sufficiently specific. To the contrary, the statute specifically provides that community service boards "shall have the same immunity as provided for counties." OCGA § 37-2-11.1 (c) (1). The immunity of counties and the extent of waiver thereof are specifically set forth by statute, as mandated by the 1991 amendment to the Georgia Constitution of 1983, Art. I, Sec.

II, Par. IX. OCGA § 36-1-4; *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995); *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994). Less than two years ago, this Court upheld the legislature's authority to extend to a political subdivision of this state "the same immunity" as a particular county. *Henderman v. Walton County Water & Sewerage Authority*, 271 Ga. 192, 193 (1) (515 SE2d 617) (1999). See also *Athens-Clarke County v. Torres*, 246 Ga. App. 215, 217 (2) (540 SE2d 225) (2000). *Henderman* clearly controls this case and, in my opinion, requires the conclusion that OCGA § 37-2-11.1 (c) (1) is constitutional.

DECIDED APRIL 12, 2001 —
RECONSIDERATION DENIED JUNE 1, 2001.

*Gambrell & Stolz, Irwin W. Stolz, Jr., Linda A. Klein, Steven Hall*, for appellant.

*Freeman, Mathis & Gary, Matthew P. Stone, Robert W. Stanley, Andrea S. Hirsch*, for appellee.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Charles E. Hoffecker, Assistant Attorney General, Owen, Gleaton, Egan, Jones & Sweeney, Timothy J. Sweeney, David C. Will, Gray, Hedrick & Edenfield, Bruce M. Edenfield*, amici curiae.